**STATE of Missouri, Respondent,**

v.

**Robert E. JACKSON, Appellant.**

**No. WD 34259.**

Missouri Court of Appeals,
Western District.

Sept. 6, 1983.

James W. Fletcher, Public Defender, and Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., and Lew A. Kollias, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

This is an appeal from a conviction for possession of a Schedule II controlled substance, Sec. 195.020, RSMo 1978, upon which

---

defendant was sentenced to two years' imprisonment.

The issue presented by the appeal is the validity of a search conducted by the police at the time of defendant's arrest, which disclosed the contraband pills in a plastic container in defendant's waistband. Defendant claims that the court erred in refusing to suppress the same as the product of an unreasonable search and seizure.

We find that the court ruled correctly in denying defendant's motion to suppress and we affirm the judgment.

The facts are as follows:

At 11 o'clock a.m. on September 29, 1981, police officer Carl Fordyce was called to the 3000 block of Prospect, Kansas City, Missouri. There he met with Ronnie McGarrah, foreman for the Wilson Plumbing Company. McGarrah reported a theft of a tool box from one of his trucks parked on that block. McGarrah and his crew were there apparently doing some sewer work.

McGarrah informed Officer Fordyce that an unknown "older" black man ("just somebody walking down the street") had told him that, at approximately 10:15 a.m., he had seen two black men take a tool box out of the truck and put it in their car. The man had identified the car as a 1974 to 1976 brown Cadillac with a California license plate, No. 166–KG4.

Fordyce left McGarrah at 11:30 a.m. and began to search for the described automobile.

At approximately 11:40 Fordyce spotted a 1974 white-over-beige Cadillac with a California license plate, No. 166–KGU at 24th and Brooklyn. Two black men were in the car, the defendant a passenger. Fordyce spotted the car about seven or ten blocks from the scene of the theft. He followed the car for approximately five blocks, about ten minutes. Fordyce stopped the car and asked the two men to get out. Neither of the men resisted nor did they say anything. "As common practice goes," Officer Fordyce then searched both men for weapons. While searching the defendant, Fordyce felt, in his front waistband under his shirt, a pill bottle.

Officer Fordyce stated that this was something that "felt out of place." He stated that "he didn't know what it was at that time," but that it "was the same shape as a shotgun shell." Fordyce removed the bottle from the defendant's waistband. It contained eight yellow-colored tablets of a then unknown substance. Fordyce stated that he did not know what the pills were at that time. No weapons were found during the frisk.

Fordyce arrested both men for larceny. None of the tools stolen were ever found in the car.

We hold that defendant's arrest was lawful.

The basic question here is the presence of "probable cause" for the warrantless arrest for larceny.

On that subject our Supreme Court said in *State v. Wiley,* 522 S.W.2d 281, 287 (Mo. banc 1975):

> The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists 'where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' *Brinegar v. United States,* 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890 (1949), quoting from *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, [555], 39 A.L.R. 790 (1925)." *Ker v. California,* 374 U.S. 23, 34–35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963).

Whether there was probable cause to arrest the appellant along with others in the apartment depends on the information in the officers' possession prior to the arrest. Of course, all the information in the possession of the officers and all reasonable inferences therefrom are pertinent to determine probable cause. Whether there is justification for probable cause to arrest without warrant must

be determined by practical considerations of everyday life on which reasonable men act and is not to be determined by hindsight by legal technicians. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The determination of probable cause depends upon the particular facts and circumstances of the individual case and no ready "litmus paper test" can be applied. Probable cause may be based on hearsay. There is a broad gulf between what is required to prove guilt and the requirement of probable cause.

■■■ Probable cause may be based upon hearsay, but the hearsay may not be accepted uncritically. It must have some inherent credibility, upon which a reasonable prudent and cautious person would act. The trial judge found in this case that the information upon which the officers acted in arresting the defendant furnished a substantial basis for a reasonable belief that an offense had been committed and that the arrestees were the culprits. In our reviewing role, we find that the trial court's determination of this question was supported by the evidence.

That a box of tools was missing from the Wilson Plumbing Company truck was established by foreman McGarrah himself, who reported the same to Officer Fordyce. As to the defendant's being the culprit, this depended upon the reliability of a hearsay report from an "older" black man who had told McGarrah he had seen the theft. The description of the car and its occupants had been quite specific. The 1974–1976 brown Cadillac might fit a great many automobiles, but the class was sharply contracted when he added the California license plate feature. When the first five of the reported characters were those on the license plate; when the car was occupied by two black males; when it was seven to ten blocks from the scene of the theft one and one-half hours after the theft—the informant's report, relayed to the policeman by McGarrah, was in harmony with and corroborated by the other facts observed by the policeman.

It was possible, of course, that the informant was a mere mischief maker, that he had made up his story out of whole cloth, but on the whole it quite reasonably seemed to the policeman that the informant was more likely telling the truth than not. It was not after all necessary that the policeman have in hand sufficient evidence to convict the defendant upon trial. The information the policeman had in this case was at least as reliable as that held sufficient in *State v. Wiley,* supra, to furnish probable cause for a lawful arrest. There the anonymous tipster had telephoned into police headquarters the information upon which the police based the defendant's arrest. See also *State v. Finley,* 588 S.W.2d 229, 232 (Mo.App.1979); and *State v. Vineyard,* 497 S.W.2d 821, 825 (Mo.App.1973).

We hold therefore that the arrest of the defendant for larceny was based upon probable cause.

Appellant in arguing that the arrest was not based upon probable cause and was therefore unlawful, cites us to *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The probable cause in those two cases was the "probable cause" which would justify a judge in issuing a search warrant. We will assume for the moment, without deciding, that probable cause for the issuance of a search warrant by a judge and "probable cause" for a warrantless arrest by a police officer are the same.[1] The appellant then undertakes to apply to the anonymous informant's report the *Spinelli* so-called "two-pronged test", and argues that the test had not been satisfied. He concludes that the information which had been received by the officer did not furnish probable cause for defendant's arrest.

In the later case of *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), decided after the briefs in this case were filed, the Supreme Court of the Unit-

---

1. See *State v. Wiley,* 522 S.W.2d at 288, n. 1.

ed States rejected the "two-pronged test" approach to the reliability of information supplied by an anonymous informant. In that case the court thus described the "two-pronged test": "In summary, these rules posit that the 'veracity' prong of the *Spinelli* test has two 'spurs'—the informant's 'credibility' and the reliability of his information.... Both the 'basis of knowledge' prong and the 'veracity' prong are treated as entirely separate requirements, which must be independently satisfied in every case in order to sustain a determination of probable cause." —— U.S. at ——, 103 S.Ct. at 2327, n. 4.

The court in *Illinois v. Gates,* supra at ——, 103 S.Ct. at 2332, adopted a "totality of circumstances" approach in the following language:

> For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. See *Jones v. United States* [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697], supra; *United States v. Ventresca,* supra; *Brinegar v. United States,* supra. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* supra, 362 U.S. at 271 [80 S.Ct. at 736]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*

It is actually that "totality of circumstances" approach by which the trial court determined that the officers had probable cause for the warrantless arrest of the defendant, which decision we find to have been amply supported by the evidence.

 If the arrest was a lawful arrest, that is dispositive of the matter. There is no question that as an incident to the arrest the officer had the right to make the search of the defendant's person which disclosed the contraband material which was the basis of the present conviction. *Draper v. U.S.,* 358 U.S. 307, 314, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Klinger v. U.S.,* 409 F.2d 299, 307 (8th Cir.1969); *State v. Holman,* 556 S.W.2d 499, 504–05 (Mo.App.1979).

Judgment affirmed.

All concur.